PRUDENTIAL INSURANCE COMPANY OF AMERICA *vs.* SARAH M. MCMAHON, *Admx. et al.*

MAY 11, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a bill of interpleader brought to ascertain to whom the proceeds of three life insurance policies upon the life of one John J. McMahon, late of Bristol, deceased, should be paid. Less certain deductions, the proceeds of the policies, which amounted to $700, are being held pending the determination of this proceeding.

A decree of interpleader was duly entered in the superior court directing the two respondents, Sarah M. McMahon, administratrix of the estate of John J. McMahon, and one Ruth L. Ingram, both of whom had made claims upon the complainant to the fund in question, to interplead. The cause was then heard upon its merits in the superior court and a justice thereof entered a decree awarding to the respondent Ingram the sum of $411 and the balance of the fund in dispute to the other respondent. From the entry of this decree the respondent McMahon has prosecuted her appeal to this court.

It appears from the policies in question that they were payable to "the executors or administrators of the Insured

. . .," unless payment was made by the complainant under a facility of payment clause, so-called. In this instance the complainant has made no attempt to exercise any of its rights and privileges under that clause and, therefore, no question can be raised thereunder in this present suit. *Capuano* v. *Boghosian,* 54 R. I. 489. No beneficiary by name was designated by the insured in the policies.

At the trial the respondent McMahon claimed the entire proceeds of the policies by reason of the fact that she was the duly appointed administratrix of the insured's estate and that the policies by their terms were payable in the manner hereinbefore described. On the other hand, the respondent Ingram contended that she was entitled to receive the sum of $411 out of the total amount due under the policies, because of the oral assignment and the delivery to her by the insured of the policies for the purpose of securing her for such sums as he might owe her at the time of his death. She maintained that the following items came within the above-named category and made up the sum of $411, *viz.*: Premiums paid by her on the policies, $51; balance of a loan made by her to the insured, $140; nursing for two weeks, $40; board for eighteen weeks, $180.

From the evidence it appeared that the respondent McMahon was the widow of the insured; that they were married in 1915 and had two children; that in 1917 the insured and his wife were separated for a time, but after 1918 lived together again until 1923, when the wife secured a divorce from bed and board on the ground of cruelty, the insured being ordered to make certain payments for the support of his children. The respondent McMahon testified that part of the difficulty at this time between herself and her husband was due to his conduct with the respondent Ingram. After the insured and his wife had separated he and the respondent Ingram lived with his mother until her death; then after a short period, with the respondent Ingram's father, who was

a farmer, and after his death, with her brother, who conducted a business in Bristol. The insured died May 7, 1936.

The policies involved herein were taken out by the insured January 28, 1935, and the premiums thereon were payable weekly. After two weeks the insured, according to the respondent Ingram's testimony, made the following statement to her: "When he had them he paid two weeks on them and he couldn't afford to keep them up, and he owed me money, and he said he was going to lapse them, and he said if I wanted them I could keep them up for the money he owed me, and if anything happened to him I could get paid for what he owed me . . . ." The insured continued, however, to pay the premiums himself for the following seven weeks, but then gave to the respondent Ingram the policies and the receipt book and thereafter, according to her testimony, she held the policies and paid the premiums out of her own money. She had the policies at the time of the insured's death and surrendered them to the complainant. A witness testified that he had been told by the insured that the latter's insurance had been made over to the respondent Ingram, and another witness testified that he heard the insured ask the said respondent, in substance, if she had kept up the premium payments on the policies.

The trial justice found, from all the facts and circumstances appearing in evidence, that the insured had made for valuable consideration an oral assignment and an actual delivery of the policies to the respondent Ingram as security for the payment to her of such sums of money as he might owe her at the time of his death. After an examination of the record herein, we are of the opinion that the evidence supports the finding of the trial justice that an oral assignment of the policies was made to the respondent Ingram upon valuable consideration, and that such finding is not clearly wrong. It is settled that an assignment may be made by parol. See *Goodsell* v. *Benson,* 13 R. I. 225. We find nothing in the provisions of the policies before us which prevents the

making of such an assignment. Further, this case is a bill of interpleader, and no question is raised as to the right of the insured to so assign the policies.

We are also of the opinion that the respondent McMahon has some ground for questioning, as she does, the finding of the trial justice that the oral assignment in issue was broad enough in its scope and intent to cover any and all indebtedness owed by the insured to the respondent Ingram at the time of the former's death, whether in existence before the assignment was made, or accruing thereafter. However, assuming the decision of the trial justice in this connection to be correct, we find that two of the items included by him in reaching the sum of $411, which he awarded to the respondent Ingram out of the proceeds of the policies, were not debts owed her by the insured at any time. In our judgment, therefore, the trial justice was clearly in error in holding that these two items were covered by the assignment of the policies. The item of $40 for nursing and the item of $180 for board are the two referred to.

The evidence in regard to the nursing item is very meager. The respondent Ingram was not a nurse. She was, when employed, a telephone operator. The evidence shows that in the winter of 1936 when the insured was ill she attended him at intervals, aggregating, perhaps, a total of two weeks. Later he was taken to a hospital where he died. Nothing in the evidence shows any understanding between the insured and respondent Ingram or any reasonable expectation on her part that she was to be paid for said services. Such evidence as there is on this matter indicates the contrary.

As to the item for board, the record reveals that the respondent Ingram was keeping house for and living with her brother, who was unmarried and in business. The insured lived with them. The evidence shows clearly that the brother was maintaining the home and that the respondent Ingram was not furnishing board to the insured.

However, it clearly appears from the evidence that the respondent Ingram paid out of her own money premiums on the policies to the amount above referred to. We find no support for the respondent McMahon's contention that in so doing she was merely acting as an agent for the insured, or that she should file a claim for the amount of such premiums against the insured's estate. We are of the opinion that, in the particular circumstances of this cause and its pleadings, she can properly be reimbursed in the present suit for this amount out of the proceeds of the policies. See *John Hancock Mutual Life Ins. Co.* v. *Hutchins*, 59 R. I. 376, 195 A. 482.

As to the loan, the trial justice, who had the opportunity of seeing and hearing the witnesses testify, found that its existence was established by the evidence. The respondent Ingram testified that she had made such a loan to the insured, apparently prior to the assignment to her of the policies. The testimony of several witnesses supported her to the extent of showing that at various times the insured had stated that he owed her money. The evidence, taken as a whole, revealed that during the later years of his life the insured was considerably in debt to various people and did not pay his bills. It was thus not unreasonable that he should have borrowed from the respondent Ingram. The respondent McMahon's contention, that since the respondent Ingram had not worked for several years she would have no funds to advance to the insured, is conjecture. She had acted as housekeeper for both her father and her brother, and the former had died in 1931. Upon consideration of all the facts and circumstances in evidence, we cannot say, therefore, that the trial justice was clearly wrong in allowing to the respondent Ingram the two above items which are part of her claim, *viz.*: $51 for premiums paid on the policies and $140 as the balance due on a loan allegedly made by her to the insured prior to the assignment in question.

452

The respondent McMahon also contends that the other respondent is barred from sharing in the proceeds of the policies because the items of debt claimed by the latter were all incidental to and connected with an immoral relationship between the latter and the insured. We are of the opinion that the respondent Ingram is not prevented from recovering in the present suit for the reason urged. The trial justice found that it had not been sufficiently established from the evidence presented that such a relationship existed. If, however, any such relationship did in fact exist between the insured and the respondent Ingram, in our judgment, it did not invalidate the assignment of the policies. From the evidence submitted such assignment, at least in so far as it related to the payment of the premiums on the policies and the alleged loan, was, in our opinion, a business transaction independent of and not incidentally connected with any immoral relationship between the insured and the respondent Ingram.

The respondent McMahon objected to the refusal of the trial justice to strike out certain testimony given by a witness produced by the other respondent and now claims her objection under her reasons of appeal. We find such objection to be without merit.

We hold, therefore, on the whole record that the respondent Ingram is entitled to be paid the sum of $191 out of the proceeds of the policies in question, and that the respondent McMahon is entitled to the balance of such proceeds.

The appeal of the respondent McMahon is sustained and the decree appealed from is reversed. On May 23, 1938 the parties may present to this court for our approval a form of decree in accordance with this opinion to be entered in the superior court.

*McGovern & Slattery,* for complainant.

*Henshaw, Lindemuth & Baker,* for respondent McMahon.

*Emilio D. Iannuccillo,* for respondent Ingram.